DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Lucas County Court of Common Pleas, where the court entered a judgment entry on a jury verdict finding appellant Michael McKenzie guilty of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree. For the reasons that follow, we find that the decision of the Lucas County Court of Common Pleas should be affirmed.
On April 19, 1999, appellant was indicted by the Lucas County Grand Jury for burglary. This charge stems from an event on April 7, 1999. On that date, according to the facts adduced at trial, Dominique Williams was returning home from her job at St. Vincent Hospital where she worked the night shift. As she was on the porch of her residence at 1201 Peck Street in Toledo at approximately 7:24 a.m., she saw a man leaving through the front door of the residence directly across the street, 1202 Peck Street. He was carrying a black video cassette recorder ("VCR") under his arm. Ms. Williams testified that, as the man was shutting the door to the house, he said, in a voice loud enough for her to hear, "hell no." She described the man as a short black man approximately five foot six inches tall and weighing one hundred forty to one hundred forty-five pounds. He had a white goatee with rubber bands hanging from it, and he was wearing a "do rag." She watched as the man ran into a field and down an alley, looking back at her as he was doing so.
According to Ms. Williams, the sun was up, it was a clear day, and she was watching the man from a distance of thirty to forty feet. She testified that she had seen this man once or twice around the neighborhood, but she had never before seen him at 1202 Peck Street. After the man disappeared down the alley, she went into her apartment building, but she did not call the police. Instead, when she next saw the caretaker of her building some thirty minutes later, she related the incident to him since he was acquainted with the residents of 1202 Peck.
Tonya Rohn and Holly Clark both testified at trial. Ms. Rohn was a resident of 1202 Peck and the owner of the stolen VCR. Ms. Clark was also a resident of 1202 Peck, and both she and Ms. Rohn knew appellant because the three worked together at Merrit Industries. Both Ms. Rohn and Ms. Clark testified that appellant had, all the while they worked with him, sported a white (or gray) goatee, and Ms. Rohn testified that it was somewhat of a conversation piece as he wore it in a ponytail secured with a rubberband. Both women also testified that appellant was known at work for repeatedly saying the phrase "hell no," or "What? Hell no."
Ms. Rohn testified that she and appellant shared an interest in videos and that appellant would come to her house a couple of times a week to borrow videos from her. (Appellant lived only two or three blocks away from her.) He always returned them. Just before the incident of April 7, 1999, appellant borrowed from Ms. Rohn a rented video tape and it broke in appellant's VCR. He told her that he would replace it. She also testified that she was in possession of one of appellant's VCRs because he had asked her to fix it. Ms. Rohn testified that, because of his frequent visits to borrow tapes, appellant had at one time or another walked through her entire apartment.
Both Ms. Rohn and Ms. Clark testified that they did not see appellant at work on the morning of the burglary until 9:00 or 9:30 a.m., shortly before the first break. However, Ms. Rohn acknowledged on cross-examination that appellant could have come in earlier and been working elsewhere in the facility. Later in the investigation, an examination of time records at Merrit Industries indicated that appellant arrived at work at 8:00 a.m. on April 7, 1999. Both Ms. Rohn and Ms. Clark testified that when they saw appellant on April 7, his head was shaven. The next day, April 8, Ms. Clark saw appellant at work and noticed that he had shaven his goatee. Ms. Rohn, who did not work on April 8, noticed the shaven goatee when she saw appellant at work on April 9.
On the morning of April 7, 1999, Ms. Rohn and Ms. Clark left together for work between 6:10 and 6:20 a.m. Ms. Rohn returned to her apartment sometime around 2:30 on that day and noticed at approximately 3:00 or 3:30 that her bathroom window was open. Ms. Rohn testified that her bathroom window was never open and that, in fact, a washer/dryer is usually positioned in front of that window. However, it had been pulled out for repair approximately one week before the burglary. (Appellant had visited as recently as two days before the burglary and was there when the washer/dryer had been pulled out away from the window.) Just as she noticed the open window, the caretaker from across the street came to tell her that his tenant had seen a man leaving 1202 Peck Street with a VCR under his arm. Ms. Rohn checked around her apartment and discovered that she was missing a black VCR. She called the police.
A police squad arrived at approximately 5:30 p.m. and Ms. Rohn spoke with Officers Lamb and Rectenwald about the burglary. She told the officers that she had just gotten into an argument with her upstairs neighbors and she suspected them of taking the VCR. She related to the officers what the caretaker had told her: that the burglary occurred between 7:00 and 8:00 a.m. For some reason never fully explained at trial, the police report taken by the patrol officers stated that the burglary occurred between 8:00 and 9:00 a.m. However, Officer Lamb testified that, though the report lists the time of the offense as between 8:00 and 9:00 a.m., they did not receive this information from Ms. Williams, the only eyewitness; they received it from Ms. Rohn, who was gone at the time of the offense and did not know firsthand when the burglary occurred. In the day or two following the burglary, officers went out to 1202 Peck Street to take pictures and to investigate for fingerprints. No usable fingerprints were found.
On April 8, 1999, Detective Regina Weigand contacted Ms. Rohn by phone and asked her questions about the incident. Detective Weigand testified that Ms. Rohn had little information for her, but she did again offer that she had argued with her upstairs neighbors and that the neighbors might be responsible for the burglary. Detective Weigand then went out to Peck Street to investigate. She noticed on the police report that someone named "Dominique" at 1201 Peck Street was a witness to the incident. She proceeded to 1201 Peck and spoke with Dominique Williams. Ms. Williams gave Detective Weigand a description of the burglar and described what she saw. Detective Weigand then spoke again to Ms. Rohn and told her of the witness's description of the burglar. At that point, appellant became the suspect.[1] On April 9, 1999, Detective Weigand showed a photographic array to Ms. Williams, and, within twenty-five seconds, Ms. Williams identified appellant as the individual she saw leaving 1202 Peck Street with a VCR under his arm on April 7, 1999.
Detective Weigand arrested appellant at Merrit Industries on April 9, 1999. After appellant's arrest, and after he waived his rights, he gave a videotaped statement. The interview lasted over an hour. During the interview, appellant denied any involvement in the burglary, and he told Detective Weigand that he was at work at approximately 7:52 a.m. on April 7. Appellant consented to a search of his home. During the search, Detective Weigand found a VCR, but it was not the black VCR taken in the burglary. Appellant indicated to Detective Weigand that he owned the VCR at his house, and his other VCR was at Ms. Rohn's house because she never returned it to him. Detective Weigand stated that she did not expect to find the missing VCR at appellant's house but believed she would be remiss in her investigation if she did not look for it there.
Appellant's case was tried to a jury on August 2, 1999. After deliberating approximately three hours, the jurors believed that they were deadlocked. Nevertheless, after further instruction from the court, the jury returned a guilty verdict just over an hour later. The trial court entered a judgment entry on the jury verdict and on August 31, 1999, sentenced appellant to six years in prison. Appellant now appeals, setting forth the following assignments of error:
"First Assignment of Error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO INSTRUCT THE JURY ON ALIBI EVIDENCE WHICH VIOLATED HIS CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND DUE PROCESS OF LAW THAT ARE GUARANTEED UNDER THE OHIO AND UNITED STATES CONSTITUTIONS.
"Second Assignment of Error:
 APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHICH VIOLATED HIS CONSTITUTIONAL RIGHTS THAT ARE GUARANTEED UNDER THE OHIO AND UNITED STATES CONSTITUTIONS.
"Third Assignment of Error:
 THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS CONTRARY TO LAW."
In his first assignment of error, appellant contends that he was denied a fair trial when the trial court erred in not giving the jury an alibi instruction. Appellant's trial counsel did not request such an instruction. Therefore, we review this assignment of error under the plain error standard of review.State v. Waddell (1996), 75 Ohio St.3d 163, 166; State v. Joseph
(1995), 73 Ohio St.3d 450, 455, reconsideration denied (1995),74 Ohio St.3d 1423, certiorari denied (1996), 516 U.S. 1178. In order to warrant reversal based on plain error, the error must be such that, but for the error, the outcome of the trial would have clearly been different. Id.; Waddell, 75 Ohio St.3d at 166.
Appellant contends that the trial court erred by not giving an alibi instruction, despite the fact that trial counsel did not give notice of an intent to present alibi testimony pursuant to R.C. 2945.58 and Crim.R. 12.1,[2] and despite the fact that trial counsel did not request an alibi instruction or object to its omission from the instructions pursuant to Crim.R. 30.[3] Appellant relies on R.C. 2945.11 to support his contention. That section provides, in pertinent part, "In charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict." Stated another way, the trial court must give the jury "* * * all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." State v.Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus.
In this case, an alibi instruction was not relevant and necessary for the jury to discharge its duty. The only possible evidence of alibi was the notation on the police report of a 8:00 to 9:00 a.m. time frame for the burglary. (Appellant was signed in to work at 8:00 a.m.) Testifying about this notation, Officer Lamb admitted that the 8:00 to 9:00 a.m. time frame was an approximation of the time of the offense given by Ms. Rohn, who was not at home when the burglary took place. Additionally, Officer Lamb's testimony was disputed: Ms. Rohn testified that she told the officers that the burglary took place between 7:00 and 8:00 a.m., as the caretaker at 1201 Peck told her. The only eyewitness testimony was that the burglary took place at approximately 7:24 a.m. Taking all of the testimony together, the evidence of alibi was weak, at best. Therefore, we find that the trial court did not err in not giving an alibi instruction to the jury.
Even assuming that the trial court erred in not suasponte giving an alibi instruction, such an error would not warrant reversal unless it affected the outcome of the trial or created a manifest miscarriage of justice. State v. Mitchell
(1989), 60 Ohio App.3d 106, 108, appeal dismissed (1990), 49 Ohio St.3d 709
. See, also, State v. Sims (1982), 3 Ohio App.3d 331,335. In well-reasoned opinions, the Eighth Appellate District has held that, "* * * where the record supports a finding of guilt beyond a reasonable doubt and the appellant cannot show that the result would have been different had the jury been instructed on the defense of alibi, the failure to instruct is not reversible error." Mitchell, 60 Ohio App.3d at 108. See, also, City ofParma v. Cosic (Mar. 30, 2000), Cuyahoga App. No. 76034, unreported (quoting Mitchell, supra). This is so because, "* * * if the defendant is found, beyond a reasonable doubt, to have committed the crime, then the jury necessarily must have considered and disbelieved the evidence of alibi." Sims,3 Ohio App.3d at 335.
In this case, appellant's only evidence that the outcome of the trial would have been different is that the jury was at one point deadlocked. However, no one inference may be drawn from this fact. Additionally, viewing the case as a whole, the jury had before it ample evidence to convict appellant for burglary. It also had before it the alibi evidence, such as it was. The jury voted to convict despite the alibi evidence. Based on this record, we cannot say that the outcome of the trial would have been different had an alibi instruction been given. See Sims, 3 Ohio App.3d at 335 (unlike an instruction on an affirmative defense, the trial court's instructions on alibi are "* * * little more than a reminder that evidence of alibi was introduced.") Accordingly, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant contends that he was denied effective assistance of counsel because trial counsel failed to request jury instructions on alibi and eyewitness identification. The Supreme Court of Ohio has held that courts should apply a two-part test to determine ineffective assistance claims. According to the Supreme Court:
 "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, at paragraph two of the syllabus, certiorari denied (1990), 497 U.S. 1011, citing State v. Lytle (1976), 48 Ohio St.2d 391; Strickland v. Washington (1984), 466 U.S. 668.
The court must defer to the strong presumption that counsel's performance falls within the wide range of reasonable professional performance. Bradley, 42 Ohio St.3d at 142. Even if counsel's performance falls outside the objective standard of reasonable representation, the court shall not reverse unless counsel's ineffectiveness resulted in prejudice. Id. In order to show prejudice warranting reversal, the defendant must show that there is a reasonable probability that, but for counsel's ineffectiveness, the outcome of the proceeding would have been different. Id., quoting Strickland, 466 U.S. at 694.
With regard to trial counsel's failure to request an alibi instruction, we have already held that appellant has not shown that such failure affected the outcome of the trial. Therefore, appellant was not denied effective assistance of counsel on that basis. See Bradley, 42 Ohio St.3d at 142. Appellant also argues that he was denied effective assistance of counsel when trial counsel failed to request a so-called "Telfaire
instruction," a cautionary instruction relating to the reliability of eyewitness identification, pursuant to United States v.Telfaire (C.A.D.C. 1972), 469 F.2d 552.[4] Whether or not to provide such an instruction lies within the sound discretion of the trial court. State v. Guster (1981), 66 Ohio St.2d 266, syllabus. Generally, a Telfaire instruction should be given where the jury would need it to resolve disputed issues or where it would otherwise assist the jury. Id. at 271.
In this case, a Telfaire instruction was not warranted. The eyewitness, Dominique Williams, had an opportunity to view appellant for four or five minutes from a distance of thirty or forty feet. The day was clear and sunny. Ms. Williams testified that she had seen appellant once or twice before around the neighborhood, and the description she gave the police closely matched the actual appearance of appellant before he shaved. She picked him out of a photo array without hesitation only a day after the incident, and there was no conflicting testimony about identification. Additionally, appellant's trial counsel cross-examined Ms. Williams about the lighting and the amount of time she was able to see the burglar. Finally, the trial court gave general instructions that would aid the jury in evaluating Ms. Williams' testimony. The court instructed the jury:
 "You are the sole judges of the facts, the credibility of the witnesses and the weight of the evidence. To weigh the evidence you must consider the credibility of the witnesses. You will apply the tests of truthfulness which you apply in your daily lives.
 "These tests include the appearance of each witness upon the stand, his or her manner of testifying, the reasonableness of the testimony, the opportunity he or she had to see, hear and know the things concerning which he or she testified, his or her accuracy of memory, frankness, or lack of it, intelligence, interest and bias, if any, together with all the facts and circumstances surrounding the testimony.
 "Applying these tests you will assign to the testimony of each witness such weight as you deem proper."
Because we find that a Telfaire instruction was not warranted in this case, we find that trial counsel was not ineffective in not requesting it.
Further, even if trial counsel was ineffective in not requesting such an instruction, given the state of the record, appellant cannot show that failure to request the instruction would have changed the outcome of the trial. See Bradley,42 Ohio St.3d at 42. Appellant's second assignment of error is found not well-taken.
Finally, appellant contends in his third assignment of error that the jury's verdict was against the manifest weight of the evidence. According to the Supreme Court of Ohio, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony." Statev. Thompkins (1997), 78 Ohio St.3d 380, 387, motion for reconsideration denied (1997), 79 Ohio St.3d 1451, quoting Tibbsv. Florida (1982), 457 U.S. 31, 42. Based on the entire record, as outlined above, we cannot disagree with the factfinder's resolution of the testimony. The record amply supports the jury's findings. Accordingly, appellant's third assignment of error is found not well-taken.
Finding that appellant was not prejudiced or prevented from having a fair trial, the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs are assessed to appellant.
JUDGMENT AFFIRMED.
[1] The police never interviewed the neighbor. Nevertheless, Ms. Rohn testified that the neighbor looked nothing like the description of the burglar that Ms. Williams provided.
[2] R.C. 2945.58 provides:
 "Whenever a defendant in a criminal cause proposes to offer in his defense, testimony to establish an alibi on his behalf, such defendant shall, not less than three days before the trial of such cause, file and serve upon the prosecuting attorney a notice in writing of his intention to claim such alibi. Notice shall include specific information as to the place at which the defendant claims to have been at the time of the
 alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi."
Crim.R. 12.1 provides:
 "Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence
 offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted."
[3] Crim.R. 30(A) provides:
 "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.
 "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."
[4] The Telfaire instruction appears in 4 Ohio Jury Instructions (1997) 41 Section 405.20(5). That instruction reads:
 "Some things you may consider in weighing the testimony of identifying witness(es) are:
 1. Capacity of the witness, that is, the (age)(intelligence) (defective senses, if any,) and the opportunity of the witness to observe.
 2. The witness' degree of attention at the time he observed the offender.
 3. The accuracy of witness' prior description (or identification, if any).
 4. Whether witness had had occasion to observe defendant in the past.
 5. The interval of time between the event and the identification.
 6. All surrounding circumstances under which witness has identified defendant (including deficiencies, if any, in line-up, photo display or one-on-one).
 If, after examining the testimony of the identifying witness you are not convinced beyond a reasonable doubt the defendant is the offender, you must find defendant not guilty."